IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 17-372-01 |
| ANTONIO GARCIA- ESCOBAR | : | |

GOVERNMENT'S SENTENCING MEMORANDUM

I.       INTRODUCTION

On September 18, 2017, defendant Antonio Garcia-Escobar entered an open plea of guilty to Count One of the Indictment in this case, charging him with illegal reentry after deportation, in violation of Title 8, United States Code, Section 1326(a) and (b)(2).  This charge arose from Garcia-Escobar's illegal reentry into the United States after having been removed from the United States to Guatemala on July 24, 2008, following a conviction in New Jersey for sexual assault of a child.  A sentencing hearing has been scheduled in this case for Monday, December 18, 2017, at 11:00 a.m.

II.      OFFENSE CONDUCT

The government's evidence established that the defendant is a native and citizen of Guatemala. On March 4, 2004, Garcia Escobar was arrested by Trenton Police and charged with Aggravated Sexual Assault-1st Degree, Sexual Assault-2nd Degree, and Endangering the Welfare of a Child-3rd Degree.  On March 14, 2005, he pleaded guilty to Sexual Assault, in violation of NJ St. § 2C-14-2b, in the Mercer County Superior Court and was sentenced to five years imprisonment, five years special parole supervision upon release, and parole supervision for life.[1]

---

[1]  According to a NJ Adult Diagnostic and Treatment Center Face Sheet Report and the defendant's own admission cited in an ICE Memorandum of Investigation dated September 15, 2005, the victim was four years old at the time of the sexual assault.

On August 31, 2005, an ICE official encountered Garcia Escobar at a N.J. Adult Diagnostic and Treatment Center and interviewed him to determine alienage and deportability.  In a Record of Sworn Statement in Affidavit Form, he stated that his true and correct name was Antonio Garcia.  He also stated that he was a native and citizen of Guatemala who illegally entered the United States in August of 2002 through Houston, Texas.  He denied any prior arrested by immigration officials and stated that he had never been ordered deported, excluded or removed from the United States.

On September 21, 2005, ICE officials served Garcia Escobar with a Notice to Appear, ordering him to appear before an immigration judge to show why he should not be removed from the United States.  ICE officials charged that he was removable because he had been convicted of a crime involving moral turpitude.  On June 23, 2008, Immigration Judge Frederic G. Leeds ordered Garcia Escobar removed from the United States to Guatemala.

On July 24, 2008, Garcia Escobar was removed from the United States to Guatemala via an ICE flight, which departed from Alexandria International Airport in Louisiana.  Immigration officials executed a Form I-205, Warrant of Deportation/Removal, in connection with the defendant's deportation and it contains the defendant's name, signature, photograph, alien number, and fingerprint.  The immigration officials who fingerprinted Garcia Escobar and who witnessed the departure signed the I-205.  Prior to his removal, immigration officials served Garcia Escobar with an I-294, Warning to Alien Ordered Removed or Deported, dated July 11, 2008, which warned him that he was prohibited from entering, attempting to enter or being in the United States "at any time" following his removal.  The form also advised him that he was required to request and obtain permission from the Secretary of Homeland Security to reapply for admission to the United States following his deportation and that illegal re-entry was a crime under 8 U.S.C. §1326 and punishable by two to twenty years' imprisonment.  The I-294 is signed by Garcia Escobar and the immigration official who served the warning.  Garcia Escobar's fingerprint also appears on the I-294.

On June 5, 2017, Deportation Officers Monaghan and Gizzi of the Philadelphia ICE ERO Violent Criminal Alien Section attempted to locate an alien named Alberto Gramajo-Cortez. The officers arrived at his last known address of 114 Ironwood Road, Levittown, PA 19057 and began conducting surveillance. They observed an individual they believed to be Gramajo-Cortez departing the address at 9:45 a.m. and seemingly identified him using prior arrest photos. The individual departed the address on a bicycle, riding on Indian Creek Drive towards New Falls Road. He made a right hand turn onto New Falls Road and came to a stop outside of Bill Worrell's Auto Body located at 6524 New Falls Road, Levittown, PA 19057. DO Monaghan pulled off New Falls Road in a parking lot adjacent to the individual believed to be Alberto Gramajo-Cortez. DO Monaghan parked and exited his vehicle to conduct a brief field interview. The individual was asked his name to which he replied Antonio Garcia Escobar. The officers asked Garcia Escobar if he had identification to which he replied, "no." They scanned Garcia Escobar's fingerprints utilizing a biometric fingerprint device to ascertain his true identity. Utilizing the biometric fingerprint device, officers learned that the individual was Antonio Garcia Escobar and that he was previously removed from the United States on July 24, 2008. DO Monaghan informed Garcia Escobar that he was under arrest for a violation of the Immigration and Nationality Act and placed him in handcuffs.

DO Monaghan transported Garcia Escobar's bicycle back to his residence. DO Monaghan knocked on the front door at 114 Ironwood Road, Levittown, PA, 19057. At approximately 10:05 a.m., an individual named Estuardo answered the door and granted DO Monaghan and DO Gizzi consent to enter the residence. The officers encountered three other Guatemalan males inside the residence and screened them for possible criminal history and prior removals from the United States utilizing a biometric fingerprint device. All individuals encountered were negative for any previous criminal history or immigration history. The officers then transported Garcia Escobar to the Philadelphia ICE-ERO for processing without incident.

3

Officer Monaghan read Garcia Escobar his Miranda rights and he agreed to waive them by signing the Declaration of Rights/Waiver in the English and Spanish languages. In a Record of Sworn Statement, he stated that his true and correct name was Abel Antonio Garcia Escobar and that he also used the name Antonio Garcia Escobar. He also stated that he was a native and citizen of Guatemala. Garcia Escobar stated that he had never been admitted into the United States as a legal permanent resident. He admitted that he had been deported from the United States in 2008 and that he illegally re-entered the United States approximately eight months earlier on foot near Houston, TX without inspection and admission by an immigration officer. Garcia Escobar admitted that he did not have any document that permitted him to legally reside in the United States. Finally, he admitted that he did not obtain permission from the Secretary of the Department of Homeland Security or the Attorney General to re-enter the United States after his deportation. ICE officials reinstated his prior order of removal.

On July 13, 2017, the defendant was charged in an indictment by a grand jury sitting in the Eastern District of Pennsylvania with reentry after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(2).

**A.     Proof of Deportation**

Defendant was deported from the United States on July 24, 2008. An immigration official witnessed the deportation/removal of the defendant and completed an I-205, Warrant of Deportation/Removal, in connection with the removal. The I-205 contains the defendant's name, alien number, photograph, fingerprint and signature.

An I-205 is a business record that should be admissible as evidence to establish the prior deportation. Courts have regularly held that such documents, authenticated by an ICE agent, are admissible as public records (Fed.R.Evid. 803(8)(B)) and/or business records (Fed.R.Evid 803(6)), and sufficient to support a conviction. *See, e.g., United States v. Green*, 2007 WL 3120328, *2-3 (3d Cir. Oct. 25, 2007) (agent introduced documents in immigration file); *United States v. Melendez-Torres*, 420 F.3d 45, 46-48 (1st Cir. 2005) (agent introduced documents in immigration file); *United States v. Aviles-*

*Martin*, 230 F.3d 1368, 2000WL 119559 (9th Cir. 2000) (documents in INS "A" file properly admitted as business records); *United States v. Loyola-Dominguez*, 125 F.3d 1315, 1317-18 (9th Cir. 1997) ("A" file records, including warrant of deportation, arrest warrant and order to show cause, held admissible as public records); *United States v. Quezada*, 754 F.2d 1190 (5th Cir. 1985) (INS Form I-205, Warrant of Deportation, is admissible as public record).

Further, the testifying officer is not required to have personally observed this defendant's alienage, deportation, and lack of authorization for reentry. *Green*, 2007 WL 3120328, at *2-3 (holding that evidence was sufficient to sustain unlawful re-entry conviction, despite agent's lack of first-hand knowledge regarding items in immigration file, because agent testified about routine file maintenance procedure and responsibility); *Quezada*, 754 F.2d at 1196 (allowing agent testimony in alien re-entry case, remarking: "Given the sheer volume of cases handled by the INS, it is crucial that the government be able to rely on properly maintained and authenticated records to establish violations")

**B.**    **Proof of Illegal Reentry**

Garcia Escobar's presence in the United States subsequent to his effectuated deportation supports the "found in" language in §1326(a)(2).

**C.**    **Proof of No Consent to Re-enter**

A representative of the United States Customs and Immigration Service would testify that CIS has no record of any application for permission for him to re-enter the United States. At trial, this witness could authenticate a Certification of Non-Existence of Record, which would reflect that no record exists of an application by the defendant for permission from the Secretary of Homeland Security to reenter the United States; this document has been obtained by CIS.

**D.**    **Proof of Identity**

According to Thomas L. Liszkiewicz, a Senior Fingerprint Specialist from the Department of Homeland Security's Forensic Laboratory, the fingerprint taken from the defendant by ICE officials on

June 5, 2017 matches the fingerprints on the I-205 from his prior removal on July 24, 2008 and the I-294 from that same removal.

    **E.**    **Proof of Alienage**

The government is in possession of the defendant's A-file, which is devoid of suggestion that he had ever become a United States citizen.[2]  He has also admitted that he is a native and citizen of Guatemala.  ICE is also in possession of a copy of the Temporary Travel Pass issued by the Guatemalan General Consulate in connection with his removal.

**III.**    **SENTENCING CALCULATION**

    **A.**    **Count One** -- 8 U.S.C. §§ 1326(a) & (b)(2) (Illegal reentry after deportation by aggravated felon)

        20 years imprisonment,  $ 250,000 fine, a term of supervised release following imprisonment of not more than 3 years, $100 special assessment.

The maximum statutory penalty the defendant faces is, as follows:

        20 years imprisonment,  $ 250,000 fine, a term of supervised release following imprisonment of not more than 3 years, $100 special assessment.

    **B.**    **Sentencing Guidelines Calculation.**

As stated in the PSR, the correct guideline calculation is as follows.  Antonio Garcia-Escobar is held accountable for a base offense level of 8, pursuant to U.S.S.G. §  2L1.2(a).  PSR ¶ 18. Ten levels are added pursuant to USSG §  2L1.2(b)(2)(A), because before the defendant was ordered deported from the United States for the first time on July 24, 2008, he sustained a conviction for a felony offense for which the sentence imposed was five years or more.  PSR ¶ 19.  With a three-level downward adjustment for Acceptance of Responsibility,  pursuant to USSG § 3E1.1 (a) and (b), the total offense

---

[2]  In <u>United States v. Rodriguez,</u>  356 F.3d 254, 260 (2d Cir. 2004), evidence of a prior deportation and lack of application for U.S. citizenship in the A-file was considered "overwhelming" evidence that a defendant was an alien.

level becomes 15.  PSR ¶¶ 25-27.  The total of the criminal history points is five, resulting in a criminal

history category of III.  PSR ¶¶ 30-32.  Based on a total offense level of 15 and a criminal history

category of III, the guideline range for imprisonment is 24 to 30 months.  PSR ¶ 61.

## IV.    ANALYSIS

### A.    Sentencing Guideline Range.

The Supreme Court has declared: "As a matter of administration and to secure nationwide

consistency, the [Sentencing] Guidelines should be the starting point and the initial benchmark." Gall v.

United States, 128 S. Ct. 586, 596 (2007).  Thus, the Sentencing Guidelines remain an indispensable

resource for assuring appropriate and uniform punishment for federal criminal offenses.  As set forth

above, the PSR correctly states that the effective sentencing guideline range that is applicable in this case

is 24 to 30 months.  See PSR ¶ 61.

### B.    Consideration of the Section 3553(a) Factors.

In addition to the Sentencing Guidelines, this Court must also consider all of the

sentencing considerations set forth in Section 3553(a).  Those factors include: (1) the nature and

circumstances of the offense and the history and characteristics of the defendant; (2) the need for the

sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide

just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to

protect the public from further crimes of the defendant; (4) the need to provide the defendant with

educational or vocational training, medical care, or other correctional treatment in the most effective

manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to

avoid unwarranted sentence disparities among defendants with similar records who have been found

guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C.

§ 3553(a).  A review of all pertinent factors supports the conclusion that, absent a motion for downward

departure in this case, a sentence within the applicable guideline range of 24 to 30 months' imprisonment

would be appropriate in this case.

The offense of conviction was serious. The evidence in this case confirms that Antonio Garcia-Escobar, after having been previously deported from the United States on July 24, 2008, following his 2005 conviction in New Jersey Superior Court for sexual assault of a four-year old female child, and was subsequently transported to Guatemala.

At the time of his deportation, immigration officials executed a Form I-205, Warrant of Deportation/Removal, in connection with the defendant's deportation; it contained the defendant's name, signature, photograph, alien number and fingerprint. It also contained the signatures of the immigration officials who fingerprinted Garcia-Escobar and who witnessed Garcia-Escobar's departure. Prior to his removal, immigration officials served Garcia-Escobar with an I-294, Warning to Alien Ordered Removed or Deported, which warned him that he was prohibited from entering, attempting to enter or being in the United States 'at any time" following his removal. The form also advised him that he was required to request and obtain permission from the Attorney General to reapply for admission to the United States following his deportation and that illegal re-entry was a crime under 8 U.S.C. §1326 and punishable by up to twenty years' imprisonment. The I-294 was signed by the immigration official who served the warning, and also contained the right index fingerprint of the defendant.

On June 5, 2017, deportation officers from ICE arrested the defendant in Levittown, Pennsylvania. He was taken into ICE custody; thereafter, ICE officials interviewed the defendant, and in a Record of Sworn Statement, he stated that his true and correct name was Abel Antonio Garcia Escobar and that he also used the name Antonio Garcia Escobar. He also stated that he was a native and citizen of Guatemala. Garcia Escobar stated that he had never been admitted into the United States as a legal permanent resident. He admitted that he had been deported from the United States in 2008 and that he illegally re-entered the United States approximately eight months earlier on foot near Houston, Texas without inspection and admission by an immigration officer. Garcia Escobar also admitted that he did not have any document that permitted him to legally reside in the United States. Finally, he admitted that he

did not obtain permission from the Secretary of the Department of Homeland Security or the Attorney General to re-enter the United States after his deportation.  The indictment in this case followed.

Accordingly, in the absence of a government motion for a downward departure, the nature and circumstances of the offense would warrant a sentence of incarceration within the advisory sentencing guideline range.

Garcia-Escobar's history and characteristics also would support the need for a sentence within the guideline range.  The U.S. Probation Office has developed information to establish that Garcia-Escobar sustained a conviction sexual assault of a minor child in 2005, which led to his original deportation in 2008. His status as a previously convicted sex offender who preyed on a young female child would highlight the need for an appropriate sentence of incarceration in this case.

The advisory guideline range of 24 to 30 months' imprisonment takes into account the defendant's circumstances and the seriousness of his offense conduct.  A sentence within the advisory sentencing guideline range would be necessary to reflect the seriousness of the offense in this case, promote respect for the law, and provide just punishment for these offenses.  Furthermore, a sentence of incarceration within the advisory guideline range would afford adequate deterrence to others who would commit a similar offense.  18 U.S.C. § 3553(a)(2).  There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ."  18 U.S.C. § 3553(a)(2)(D).  Restitution is not an issue in this case.  18 U.S.C. § 3553(a)(7).

The defendant must be held responsible for his own actions.  All the appropriate considerations of sentencing, including the nature of the offense and the character of the offender, call for a term of incarceration within the applicable sentencing guideline range.  Therefore, all of the appropriate considerations of sentencing favor the imposition in this case of such a sentence.

## VI.   CONCLUSION

In this case, a full review of all pertinent factors supports the conclusion that a

sentence within the advisory guideline range of 24 to 30 months' imprisonment is appropriate in this case.

Respectfully submitted,

LOUIS D. LAPPEN
United States Attorney


 s/JOSEPH T. LABRUM III
JOSEPH T. LABRUM, III
Assistant United States Attorney

Dated: December 15, 2017

10

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the Government's Sentencing Memorandum has

been served by me, this date, by electronic mail upon the following individual:

> Maranna J. Meehan, Esquire
> Federal Defender Association
> 601 Walnut Street, Suite 540 W
> Philadelphia, PA 19106
> maranna_meehan@fd.org

 s/JOSEPH T. LABRUM III
JOSEPH T. LABRUM III
Assistant United States Attorney

Date: December 15, 2017

11